UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THERESA E. WELCH and
ANGELICA A. WELCH,

                    Plaintiffs,          **MEMORANDUM and ORDER**
    -against-
                                                  03-CV-2528 (SLT)(CLP)

WYELER ALEXIS, CLAUDE FILS AIME,
FRANCK D. FILS-AIME and
MARGUERITE A. HESSINI,

                    Defendants.
------------------------------------------------------------x
**TOWNES, United States District Judge:**

        On January 29, 2003, plaintiff Angelica A. Welch ("Angelica") and her sister, plaintiff Theresa E. Welch ("Theresa"), were passengers in an Infinity driven by defendant Wyeler Alexis ("Alexis") and allegedly owned by defendant Franck D. Fils-Aime ("Franck"). Around 9 p.m., while Alexis was making a left turn from Flatbush Avenue onto Church Avenue in Brooklyn, a Honda struck the Infinity on the rear passenger-side door. On May 21, 2003, plaintiffs commenced this diversity action pursuant to 28 U.S.C. § 1332 to recover for injuries that they allegedly suffered during the accident.

        Although plaintiffs' complaint alleges that defendant Marguerite A. Hessini was the driver and owner of the Honda, Complaint at ¶¶ 13-14, plaintiffs learned during discovery that she was not involved in the accident, *see* Letter to Hon. Carol B. Amon from John P. Bostany, Esq., dated March 3, 2004, at 1, and voluntarily dismissed the action against Hessini. *See* Order dated March 11, 2004. Plaintiffs subsequently dismissed the action as against defendants Alexis and Claude Fils Aime in order to establish complete diversity in this action. *See* Consent Orders dated May 18, 2005, and October 16, 2006. Therefore, Franck is the only defendant still

remaining in this action.[1]

This defendant now moves pursuant to Fed. R. Civ. P. 56 for partial summary judgment, alleging that Angelica has not suffered "serious injury" as defined in section 5102(d) of the New York State Insurance Law (hereinafter "§ 5102(d)"), which is necessary to sue for automobile accident-related damages under New York's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law Art. 51. For the reasons set forth below, defendant's motion is granted and Angelica's action is dismissed.

The Summary Judgment Standard

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant meets this burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). The non-movant cannot avoid summary judgment "through mere speculation or conjecture" or "by vaguely asserting the existence of some unspecified disputed material facts." *Western World*, 922 F.2d at 121 (internal quotations and citations omitted). Moreover, the disputed facts must be material to the issue in the case, in that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

---

[1]Since the parties agree that Franck is a resident of Pennsylvania, complete diversity exists between plaintiffs and the remaining defendant. The Referral Order, dated September 29, 2006, which directed Magistrate Judge Pollak to prepare a report and recommendation concerning the existence of subject-matter jurisdiction in this case, is, therefore, withdrawn.

The Parties' Submissions

Franck has met his burden of showing that there is no genuine issue of fact as to whether Angelica sustained a "serious injury." In support of his motion, Franck has submitted an affirmation from his attorney, Dominick DeSantis, Esq. (the "DeSantis Aff."), which attaches various exhibits. These exhibits include Angelica's responses to interrogatories (*id.*, Ex. C.); the transcript of Angelica's March 5, 2004, deposition (*id.*, Ex. D); Kings County Hospital records relating to Angelica's treatment immediately following the accident (*id.*, Ex. E) and medical records from a treating neurologist, Dr. Xiao-Ke Gao (*id.*, Ex. F).

According to Angelica's deposition testimony, she was riding in the front passenger seat of the Infinity when the Honda struck its passenger-side rear door. Angelica was struck in the head by the Infinity's rearview mirror and hit her right hand on something inside the car, but could not recall suffering any other injuries. DeSantis Aff., Ex. D, p. 29. Angelica was able to exit the vehicle without assistance and did not remember receiving any treatment from paramedics at the scene. *Id.* at pp. 36, 39. In contrast, Theresa, who was sitting in the passenger-side rear seat, was knocked unconscious and had to be removed from the vehicle by paramedics. *Id.* at pp. 33, 36.

Angelica was transported to Kings County Hospital where, according to the hospital records, she complained of pain to her forehead, right side and right arm or elbow. Hospital personnel had the arm X-rayed and determined that it was not broken. They then gave her Motrin and advised her that the bump to her forehead "would go down in a few days." *Id.* at p. 42. Although Angelica testified at her deposition that she experienced back pain as soon as she exited the Infinity and that she complained of back pain at the hospital, *id.* at p. 43, that complaint is not reflected in the Kings County Hospital records.

3

Angelica was not admitted to the hospital and was discharged without any prescriptions. According to the discharge papers, Angelica was advised to "Return to ER immediately if pain gets worse." DeSantis Aff., Ex E. However, Angelica did not seek further medical treatment until February 10, 2003, when she visited the Manhattan offices of Dr. Xiao-Ke Gao, a board-certified neurologist to whom she had been referred by her attorney.

At the time of the accident, Angelica was an eighteen-year-old high school student, who had been employed as a cashier at Express – a Kings Plaza clothing store – for approximately two months. DeSantis Aff., Ex. D, at pp. 51, 67. Although Angelica claimed that she was bedridden for "[a]bout two months," *id.* at pp. 66-67, she also testified that she only missed one week of school and "attempted to go back" to work at Express two weeks after the accident. *Id.* at pp. 51, 69. Indeed, Angelica was not prevented from returning to work because of physical limitations; she quit after her manager insisted that she provide proof that she had been in a car accident and "made a few smart comments" about Theresa. *Id.* at p. 53.

Angelica's responses to interrogatories also contradict her claims that she was bedridden for two months. In response to an interrogatory asking plaintiffs to state the periods of time that they were confined to home and bed, Angelica stated that she "was confined to bed and home for a period of 3 weeks following the accident." DeSantis Aff., Ex. C, p. 2.

In response to defendant's motion, Angelica has submitted a memorandum of law which attaches three exhibits: a Declaration of Angelica Welch dated February 10, 2006 ("Angelica's Declaration"); a Declaration of Xiao-Ke Gao dated February 8, 2006 ("Gao's Declaration"); and a more legible and complete copy of the same hospital records which are attached as Exhibit E to the DeSantis Affirmation. Gao's Declaration confirms that Angelica first consulted him on February 10, 2003. The doctor examined her and "found (1) tenderness to the right hand and a

4

right hand contusion; (2) tenderness and pain of the right paraspinal muscles at C3-C7 levels; [and] (3) [a] right hip contusion." Gao's Declaration at ¶ 5. Based on this examination and his review of the hospital records, Dr. Gao opined "that as a proximate result of the . . . accident, Angelica . . . suffered (1) vertigo consisting of dizziness and imbalance; (2) photophobia; (3) throbbing headaches involving the entire head; (4) neck pain radiating to the posterior of the left shoulder; (5) limitation of motion to the least two digits of the right hand; [and] (6) lower back pain radiating to the legs." *Id.* at ¶ 6. In addition, Dr. Gao stated that "[t]hese injuries, in my medical opinion, would prevent [Angelica] from working as a cashier, at least during the first three months following the accident, due to difficulty picking up packages with her injured hand and injuries to her neck and back." *Id.* at ¶ 7.

The hospital records, however, do not indicate that Angelica complained of vertigo, photophobia, throbbing headaches, injuries to her right hand, or neck or back pain immediately following the accident. Indeed, an "FDNY Ambulance Call Report," included among the hospital records, indicates that Angelica primarily complained of pain to her right elbow, and denied loss of consciousness, "neck/back pain" or dizziness. Nothing in the hospital records or in the memorandum of law suggests that Angelica underwent any medical tests other than the X-ray to her right arm.

Notwithstanding the hospital records, Angelica's Declaration asserts that she had "extreme head and back pain and an open wound to [her] right wrist" at the time she was taken to Kings County Hospital. Angelica's Declaration at ¶ 2. She further asserts that by the time she first saw Dr. Gao, she was suffering "(1) pain in the right hand; (2) back pain; (3) dizziness; (4) throbbing headaches; [and] (5) neck pain." *Id.* at ¶ 7. Although Angelica claims that she

5

"continuously took medication for . . . pain and underwent intense therapy both at home and at the doctor in 2003," *id.* at ¶ 8, she also states that she saw Dr. Gao only "approximately five times in 2003" before discontinuing treatment in 2004. *Id.* at ¶ 10.

Angelica's Declaration makes no mention of her attempt to return to work or her decision to quit her job at Express. Rather, the Declaration states that she "could not continue employment as a cashier," *id.* at ¶ 4, and implies that this was due solely to her injuries, stating:

> Because of my hand and back injuries, I was unable to perform the duties of a cashier, which involves (1) lifting packages; (2) handling merchandise; [and (3)] bending down to lift packages.

*Id.* at ¶ 5. The declaration also makes no mention of her schooling, implying instead that Angelica was physically unable to return to work until September 2003, when she began work for Walden's Books in Kings Plaza. *Id.* at ¶ 6. In addition, Angelica's Declaration states that during the four months following the accident, she could not go roller skating and "could not even sleep at night because of her injuries." *Id.* at ¶ 9.

Like Angelica's Declaration, plaintiff's memorandum of law makes no reference to her student status, asserting instead that "Angelica was out of work due to her injuries for six months" and that this gap in employment alone "more than satisfies the 90 day rule." Memorandum of Law in Opposition to Motion for Summary Judgment ("Plaintiff's Memo") at p. 5. The memorandum does not mention the conversation between Angelica and her manager, but quotes only selected portions of Angelica's deposition in an effort to suggest that her failure to return to work was due to her physical limitations. *Id.*, at pp. 1-2.

Plaintiff's Memo also clarifies that Angelica's claim that she suffered a "serious injury" is predicated solely on the contention that "she sustained 'a medically determined injury or

6

impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.'" Plaintiff's Memo at pp. 3-4 (quoting § 5102(d)). The memorandum quotes from that portion of *Rivera v. United States*, 994 F. Supp. 406 (E.D.N.Y. 1998), *aff'd*, 181 F.3d 83 (2d Cir. 1999), which cites *D'Avolio v. Dictaphone Corp.*, 822 F.2d 5 (2d Cir. 1987), for the proposition that objective medical evidence is unnecessary to establish a "medically determined injury" under § 5102(d). However, Plaintiff's Memo makes no mention of the New York Court of Appeals' landmark decision in *Toure v. Avis Rent A Car Sys., Inc.*, 98 N.Y.2d 345, 746 N.Y.S.2d 865 (2002). As discussed below, the *Toure* decision leaves no doubt that objective medical testimony *is* necessary, and that Angelica's showing is insufficient to sustain her burden of establishing a genuine issue of material fact regarding whether she sustained a serious injury.

The No-Fault Law

New York State's "No-Fault Law" – technically, the Comprehensive Automobile Insurance Reparations Act, N.Y. Ins. Law §§ 5101-5108 – was enacted with the "objective of promoting prompt resolution of injury claims, limiting cost to consumers and alleviating unnecessary burdens on the courts." *Pommells v. Perez*, 4 N.Y.3d 566, 570-71, 797 N.Y.S.2d 380, 382 (2005). Under this law, "[e]very car owner must carry automobile insurance, which will compensate injured parties for 'basic economic loss' occasioned by the use or operation of that vehicle in New York State, irrespective of fault." *Id.*, 4 N.Y.3d at 571, 797 N.Y.S.2d at 382 (citing N.Y. Ins. Law §§ 5102(a), 5103). A person cannot initiate a negligence action to recover

7

for damages caused by an automobile accident unless the person has sustained a "serious injury." *See* N.Y. Ins. Law § 5104(a). Thus, the No-Fault Law essentially effects a compromise: "prompt payment for basic economic loss to injured persons regardless of fault, in exchange for a limitation on litigation to cases involving serious injury." *Pommells*, 4 N.Y.3d at 571, 797 N.Y.S.2d at 382.

As defined in § 5102(d):

> "Serious injury" means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

Angelica's claim that she suffered a "serious injury" is predicated solely on the last of these categories, under which a plaintiff must establish three elements: that "(a) there was a medically determined injury, (b) the impairment prevented the injured person from performing substantially all of the material acts of the person's customary daily activities, and (c) the incapacity lasted for at least 90 out of the first 180 days immediately following the injury." *D'Avolio*, 822 F.2d at 6.

When the Second Circuit decided *D'Avilo* in 1987, there was no caselaw requiring that "element (a) . . . be proven by an expert medical witness," or "requiring that elements (b) and (c) . . . be shown by medical testimony." *Id.* In the absence of such caselaw, the *D'Avilo* Court held that a "plaintiff's testimony as to the duration and nature of her impairment was . . . sufficient to

put the 'serious injury' issue before the jury." *Id.* at 7.

By the time *Rivera v. United States* – the case cited in plaintiff's memorandum of law – was decided, there were "a few New York cases" holding that proof of a medically determined injury could not rest solely on the plaintiff's subjective complaints, but had to be "supported by objective medical evidence." *Rivera*, 994 F. Supp. at 406. However, there were also "[s]everal New York cases" which did not specifically require objective evidence of injury, but only "'competent' or 'credible' medical evidence" supporting a finding of serious injury. *Id.* at 407. Noting that the New York Court of Appeals had not yet "directly answered the question of whether objective medical evidence is specifically required to establish a serious injury under § 5102(d)," the *Rivera* Court expressly declined to predict how the State's highest court would rule on the issue. *Id.* at 408. Instead, the *Rivera* Court avoided the issue by "assuming that objective medical evidence of injury is required to demonstrate serious injury," and finding that the plaintiff had adduced such evidence. *Id.* at 409.

In 2002, the Court of Appeals resolved the split in authority which had been noted in the *Rivera* opinion, holding that "objective proof of a plaintiff's injury" was necessary to surmount the serious injury threshold and that "subjective complaints alone" were insufficient. *Toure*, 98 N.Y.2d at 350, 746 N.Y.S.2d at 868. The *Toure* Court stated:

> An expert's *qualitative* assessment of a plaintiff's condition . . . may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system . . . By contrast, an expert's opinion unsupported by an objective basis may be wholly speculative, thereby frustrating the legislative intent of the No-Fault Law to eliminate statutorily-insignificant injuries or frivolous claims.

*Id.*, 98 N.Y.2d at 350-51, 746 N.Y.S.2d at 868 (emphasis in original).

The *Toure* Court applied these principles to three different cases, one of which – *Nitti v. Clerrico* – involved "the '90/180' category" at issue in this case. The Court ruled that, even though this category lacked the "significant" and "consequential" terminology of other categories of serious injury, a plaintiff was required to "present objective evidence of 'a medically determined injury or impairment of a non-permanent nature.'" *Id.*, 98 N.Y.2d at 357, 746 N.Y.S.2d at 872-73 (quoting § 5102(d)). Applying this rule, the Court held that a medical expert's testimony that he had detected a spasm was not objective evidence unless the expert indicated what test, if any, he performed to induce the spasm. *Id.*, 98 N.Y.2d at 357, 746 N.Y.S.2d at 873. The Court also held that tests which the expert had performed to evaluate a plaintiff's range of motion were essentially subjective because "they relied on [the] plaintiff's complaints of pain." *Id.* at 358.

In light of *Toure*, it is clear that Angelica has failed to provide adequate evidence to create a genuine issue of material fact as to whether she sustained a serious injury. First, she has not presented any "objective evidence" of a medically determined injury or impairment of a non-permanent nature. Gao's Declaration states that the doctor examined Angelica on February 10, 2003, and "found (1) tenderness to the right hand and a right hand contusion; (2) tenderness and pain of the right paraspinal muscles at C3-C7 levels; [and] (3) [a] right hip contusion." Gao's Declaration at ¶ 5. The bruises do not constitute serious injury, and Gao's Declaration does not indicate what tests, if any, Dr. Gao performed in making the findings of tenderness and pain. This does not appear to be mere oversight; Dr. Gao's medical records, which are attached as Exhibit F to the DeSantis Affirmation, indicate that these findings were based solely on Angelica's reactions to Dr. Gao's palpation and rotation of her neck. *See* DeSantis Aff., Ex. F.

10

Such tests are essentially subjective because they rely on "plaintiff's complaints of pain." *See Toure*, 98 N.Y.2d at 358, 746 N.Y.S.2d at 873. Therefore, there is nothing in plaintiff's responsive papers to suggest an objective basis for Dr. Gao's findings.

Similarly, there is no objective evidence to support Dr. Gao's opinion that "as a proximate result of the . . . accident, Angelica . . . suffered (1) vertigo consisting of dizziness and imbalance; (2) photophobia; (3) throbbing headaches involving the entire head; (4) neck pain radiating to the posterior of the left shoulder; (5) limitation of motion to the least two digits of the right hand; [and] (6) lower back pain radiating to the legs." Gao's Declaration at ¶ 6. Although Gao's Declaration states that this opinion was based on the doctor's examination of Angelica and review of the hospital records, there is no mention of vertigo or photophobia in either the hospital records or Dr. Gao's own records. There is also nothing in Dr. Gao's records to suggest that he performed any tests to evaluate the range of motion in Angelica's right hand, much less any comparison of Angelica's range of motion to the norm. In addition, the diagnoses of headaches and neck and lower back pain appear to be based solely on Angelica's subjective complaints. Indeed, the ambulance records submitted with Plaintiff's Memo indicate that Angelica denied loss of consciousness, dizziness or "neck/back pain" immediately following the accident. Accordingly, Dr. Gao's opinion that the accident caused these injuries appears to be wholly speculative.

Even if there were objective medical proof to support Angelica's claim of serious injury, the evidence presented by plaintiff would be inadequate to show that any of these injuries prevented Angelica from performing substantially all of the material acts which constituted her usual and customary daily activities for at least 90 of the first 180 days following the accident.

11

While Angelica has given various accounts of the amount of time she spent confined to bed and to home, all of her estimates fall short of the 90 days required under the statute. Indeed, the longest estimate – provided at the March 5, 2004, deposition – was that she had been bedridden for only "about two months." However, even that estimate was undercut both by her October 14, 2003, responses to interrogatories, in which she stated that she was confined to bed and home for only three weeks, DeSantis Aff., Ex C, p. 2, and her March 5, 2004, deposition testimony, in which she admitted that she missed only one week of school. DeSantis Aff., Ex D, p. 69.

Although Angelica's Declaration attempts to imply that she was incapable of returning to work until September 2003, her deposition testimony indicates that she attempted to go back to work at Express two weeks after the accident. *Id.*, at p. 51. While Angelica speculates that she would have been "unable to perform the duties of a cashier," Angelica's Declaration at ¶ 5, Angelica herself denied that she quit on account of these disabilities. Rather, she testified at her deposition that she chose to quit her job at Express in February 2003 because the manager demanded proof of the accident as a condition of her returning to work and insulted Theresa. DeSantis Aff., Ex D, p. 53.

To be sure, Angelica has adduced evidence to show that she was unable to roller skate during the first four months after the accident, Angelica Declaration at ¶ 9, had difficulty sleeping during that period, *id.*, and was unable to perform some of her household duties following the accident. DeSantis Aff., Ex D, pp. 72-73. However, this showing does not suffice to establish that she was unable to perform "substantially all of the material acts of [her] customary daily activities" during that four-month period. Accordingly, Angelica has not adduced evidence sufficient to show a genuine issue of material fact as to whether she sustained a serious injury as a result of the accident.

## CONCLUSION

For the reasons set forth above, defendant Franck D. Fils-Aime's motion for partial summary judgment is granted and the action brought by plaintiff Angelica A. Welch is dismissed. Since the parties agree that Franck D. Fils-Aime is a resident of Pennsylvania, the Referral Order dated September 29, 2006, which directed Magistrate Judge Pollak to prepare a report and recommendation concerning the existence of subject-matter jurisdiction in this case, is withdrawn.

**SO ORDERED.**

/s/
SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
October 18, 2006